UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

David W. Doyon

   v.                                      Civil No. 18-cv-1128-JD
                                           Opinion No. 2019 DNH 098
Joel R. Porter, Jr.


O R D E R

David Doyon filed this action against his stepbrother, Joel Porter Jr. ("Porter Jr."), alleging intentional interference with an inheritance (Count I) and unjust enrichment (Count II). Porter Jr. filed a motion to dismiss Count I for failure to state a claim upon which relief can be granted. Porter Jr. argues that New Hampshire does not recognize the tort of intentional interference with an inheritance. Doyon opposes dismissal.

Standard of Review

Porter Jr. answered the complaint before filing the motion to dismiss. Accordingly, the court will consider the motion under the standard for judgment on the pleadings. See, e.g., Weeks v. Five Bros. Mortg. Servs. & Securing, Inc., 2014 WL 1379335, at *3 (D.N.H. Apr. 9, 2014).

A motion for a judgment on the pleadings is evaluated under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Diaz-Nieves v. United States, 858 F.3d 678, 689 (1st Cir. 2017); Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012). Judgment on the pleadings, therefore, is appropriate if the facts from the pleadings, taken in the light most favorable to the nonmovant, fail to allege a plausible entitlement to relief. Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-58 (2007)).

## Background

As noted above, Doyon and Porter Jr. are stepbrothers. Doyon's mother, Bernadette Porter ("Bernadette"), was married to Porter Jr.'s father, Joel Porter Sr. ("Porter Sr."). Doyon lives in Arizona, and Porter Jr. lives in California.

On March 15, 2018, Bernadette and Porter Sr. met with Attorney Virginia Sheehan in Concord, New Hampshire, to prepare an estate plan. At that time, Bernadette and Porter Sr. had cash and financial assets worth $1,063,200 (the "Financial Assets") and joint ownership of property located in Port Charlotte, Florida (the "Florida Property"). Porter Sr., alone, owned property in Raymond and Epping, New Hampshire (the "Raymond Property" and the "Epping Property"). Bernadette,

alone, owned property in Hooksett, New Hampshire (the "Hooksett Property"). Bernadette and Porter Sr. resided together at the Hooksett Property. This property together comprised Bernadette and Porter Sr.'s marital estate.

According to Doyon's allegations, on March 15, 2018, Bernadette and Porter Sr. agreed on a "mutual and reciprocal scheme of distribution" of their marital estate. Doc. 1 ("Compl.") ¶ 17. The plan was as follows: (1) upon Porter Sr.'s death, the Raymond and Epping Properties would pass to his son, Porter Jr.; (2) upon Bernadette's death, the Hooksett Property would pass to her son, Doyon, but Porter Sr. would retain a life estate in the property if he survived Bernadette; (3) the remaining marital assets (i.e., the Financial Assets and the Florida Property) would pass to the surviving spouse; and (4) upon the death of the surviving spouse, the Financial Assets and the Florida Property would be divided equally between Porter Jr. and Doyon. However, Porter Sr. and Bernadette did not sign documents effectuating the entire inheritance plan at that time.

Sometime between March 20, 2018, and April 2, 2018, Porter Jr. and his wife Martina Porter began residing with Porter Sr. and Bernadette in Hooksett. On April 2, 2018, Bernadette, Porter Sr., Porter Jr., and Martina Porter met with Attorney Sheehan to review and execute the documents to effectuate the inheritance plan. Porter Jr. and Martina were asked to leave

3

while Porter Sr. and Bernadette reviewed and signed the documents.

Attorney Sheehan told the group that Bernadette's and Porter Sr.'s living wills had been executed and that Bernadette had executed her will. Porter Sr., however, was "having some difficulty by the time [Attorney Sheehan] sought to have him execute his will." Compl. ¶ 20. Because they had covered a lot of material, Attorney Sheehan felt that Porter Sr. needed to rest and come back at another time to execute his will.

Porter Jr. agreed to call Attorney Sheehan to schedule a follow up appointment for Porter Sr. Porter Jr., however, did not schedule a follow up appointment, although Attorney Sheehan reached out to Porter Jr. on several occasions.

Bernadette died on April 19, 2018, due to complications from surgery. Porter Jr. and Martina continued to live with Porter Sr. in Hooksett while deciding whether Porter Sr. should relocate to California to live with them.

Bernadette had appointed Porter Sr. as her executor in her will, with Porter Jr. and Doyon to serve as alternates. Porter Jr., Doyon, and Attorney Sheehan determined that Porter Jr. and Doyon should serve as co-executors, and a New Hampshire Probate Court approved them as co-executors on May 17, 2018.

Around April 25, 2018, Porter Jr., with Doyon's assistance, began transferring title of Bernadette's sole accounts, and the

4

joint accounts, to Porter Sr. solely. On May 11, 2018, the Florida Property was conveyed to Porter Jr. and Porter Sr. as joint tenants in common with rights of survivorship.

On August 18, 2018, Porter Sr. died. Doyon told Porter Jr. that he would travel to New Hampshire to discuss how to effectuate the inheritance plan. After Porter Sr.'s death, Porter Jr. held a yard sale disposing of "valuable tangible personal property" that had been the joint property of Porter Sr. and Bernadette prior to her death. Compl. ¶ 43. Doyon arrived in New Hampshire to find the Hooksett Property vacant, with personal documents and financial records belonging to Porter Sr. and Bernadette missing.

## Discussion

Porter Jr. moves to dismiss Count I, intentional interference with an inheritance, on the ground that it is not a tort recognized in New Hampshire. Doyon opposes dismissal, asserting that New Hampshire would recognize the tort and that many other states have found that the claim is viable. Porter Jr. did not file a reply.

The New Hampshire Supreme Court has not addressed whether New Hampshire recognizes the tort of intentional interference with inheritance or gift. The court is "obliged" to provide its "'best guess' as to open questions of state law when necessary."

5

Noonan v. Staples, Inc., 556 F.3d 20, 30 (1st Cir. 2009); see also Chamberlin v. 101 Realty, Inc., 626 F. Supp. 865, 868-69 (D.N.H. 1985) (concluding that the New Hampshire Supreme Court would recognize the tort of intentional infliction of emotional distress despite the "paucity of New Hampshire case law discussing the tort . . . .").

To make its "best guess," the court "may look to 'analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the [state's highest court] would decide the issue at hand." Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 21 (1st Cir. 2018) (quoting N. Am. Specialty Ins. Co. v. Lapalme, 258 F.3d 35, 38 (1st Cir. 2001)); see also In re Montreal, Maine & Atl. Railway, Ltd., 888 F.3d 1, 7 (1st Cir. 2018); Rodriguez-Suris v. Montesinos, 123 F.3d 10, 13 (1st Cir. 1997) ("Where a jurisdiction's highest court has not spoken on a precise issue of law, [the court] look[s] to 'analogous state court decisions, persuasive adjudications by courts of sister states, learned treatises, and public policy considerations identified in state decisional law' in order to make an 'informed prophecy' of how the state court would rule on the precise issue."). Federal courts, however, should avoid extending state law beyond its "well-marked boundaries." Braga v. Genlyte Grp., 420 F.3d 35,

42 (1st Cir. 2005); see also RFF Family P'Ship, LP v. Ross, 814 F.3d 520, 535 (1st Cir. 2016).

Porter Jr. relies primarily on a case from the District of Massachusetts, Torosian v. Garabedian, which dismissed an intentional interference with inheritance claim on the ground that it is not a recognized tort in New Hampshire. 206 F. Supp. 3d 679, 682 (D. Mass 2016). In dismissing the claim, the court reasoned that "[i]ntentional interference with inheritance or gift is not a commonly-recognized tort. In fact, many states have yet to consider the tort at all, including New Hampshire." Id. Although it is true that no on-point decision from the New Hampshire Supreme Court recognizes the tort of intentional interference with inheritance or gift, the United States Supreme Court found, in 2006, that it is, in fact, "widely recognized." Marshall v. Marshall, 547 U.S 293, 312 (2006); see also Umsted v. Umsted, 446 F.3d 17, 20 (1st Cir. 2006) ("[A]t least 23 states have recognized some form of the tort . . . ."). Moreover, twenty-five years before the Supreme Court's observation in Marshall, the Supreme Judicial Court of Maine noted that "with a frequency that approaches a general rule of law, courts have recognized an independent action for the wrongful interference with an intended bequest." Cyr v. Cote, 396 A.2d 1013, 1018 (Me. 1979)). Likewise, the tort is

7

recognized in the Restatement (Second) of Torts § 774B, which also notes its widespread recognition.

New Hampshire generally follows the Restatement (Second) of Torts in actions for tortious interference, which is expressly recognized in New Hampshire in the context of interference with contractual relations. See Nat'l Employment Serv. Corp. v. Olsten Staffing Servs., Inc., 145 N.H. 158, 162 (2000) ("We have previously applied the Restatement (Second) of Torts to actions for tortious interference with contractual relations."); see also Morancy v. Morancy, 134 N.H. 493, 495-96 (1991) ("The tort of intentional infliction of emotional distress is widely recognized in other States, see Restatement (Second) of Torts § 46 . . . , and we now recognize the tort in this State."). Indeed, intentional interference with an inheritance or gift is not a significant departure from the tort of intentional interference with a contractual relationship, and the New Hampshire Supreme Court has expressed a willingness to adopt a cause of action where it bears a close relationship to another, already-recognized cause of action. See Morancy, 134 N.H. at 496 ("Having previously recognized the tort of negligent infliction of emotional distress, there is no logical reason why we should not now recognize the tort of intentional infliction of emotional distress."); Restatement (Second) of Torts § 774B (stating that interference with inheritance is "an extension to

a type of noncontractual relation of the principle found in the liability for intentional interference with prospective contracts . . . .").

Other than pointing to Torosian, which, as explained above, does not provide a persuasive assessment of the tort's recognition, Porter Jr. has not directed the court toward any logical reason, public policy, or rule that would contraindicate New Hampshire's recognition of the tort under the circumstances alleged by Doyon. Cf. Kassel v. Gannett Co., Inc., 875 F.2d 935, 949 (1st Cir. 1989) (declining to adopt proposed interpretation of New Hampshire law because public policy and a "long-held rule" counseled otherwise). To be sure, courts have found that the tort should not be recognized in circumstances where an adequate remedy is available in probate court or through a statutory scheme. See Umsted, 446 F.3d at 21-22. Porter Jr. does not identify any statutory scheme that Doyon could have used to bring his claims, and he does not contest Doyon's assertion that the probate court does not provide a remedy for this claim.

Lastly, New Hampshire recognizes unjust enrichment with respect to fraud in acquiring a share of decedent's estate. See Patey v. Peaslee, 101 N.H. 26, 28 (1957). Unjust enrichment, which sounds in equity and provides remedies of constructive trust and restitution, however, does not undercut the

9

intentional interference tort, which sounds in law and provides a damages remedy. See id.; Axenics, Inc. v. Turner Const. Co., 164 N.H. 659, 669-70 (2013) ("Unjust enrichment is an equitable remedy . . . ."); Demetracopoulos v. Wilson, 138 N.H. 371, 376-77 (1994) (explaining the damages available for intentional interference with contractual relations and citing Restatement (Second) of Torts § 774A(1)(c)). Therefore, intentional interference with inheritance complements unjust enrichment, it does not displace it. Restatement (Third) of Torts: Liability for Economic Harm § 18 comment. a.[1] Further, New Hampshire recognizes both intentional interference and unjust enrichment causes of action in the contractual relations context. See Singer Asset Fin. Co., LLC v. Wyner, 156 N.H. 468, 477-78 (2007).[2]

Therefore, the court finds that New Hampshire would recognize the tort of intentional interference with an inheritance.[3]

---

[1] Tentative Draft No. 3 (Mar. 7, 2018).

[2] However, as Doyon observes in his response, this does not mean that he can necessarily recover under both theories. Rather, the court finds only that the New Hampshire Supreme Court's recognition of an unjust enrichment cause of action does not proscribe its recognition of intentional interference with inheritance.

[3] In his motion for judgment on the pleadings, Porter Jr. did not challenge whether Doyon's claim, if recognized, would meet any particular formulation of intentional interference with

## Conclusion

For the foregoing reasons, Porter Jr.'s motion to dismiss (doc. no. 11) is denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

June 25, 2019

cc: Marla Bellerive Matthews, Esq.
    Jan P. Myskowski, Esq.
    Robert M. Shepard, Esq.
    Tanya L. Spony, Esq.

---

an inheritance. The court does not here consider the merits of the claims but only holds that the New Hampshire Supreme Court would recognize the tort here.