UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

David W. Doyon

    v.                                    Civil No. 18-cv-1128-JD
                                        Opinion No. 2019 DNH 192

Joel R. Porter, Jr.

O R D E R

David Doyon filed this action against his stepbrother, Joel Porter Jr. ("Porter Jr."), alleging intentional interference with an inheritance (Count I) and unjust enrichment (Count II). Porter Jr. filed a motion for summary judgment as to both counts (doc. no. 16). Doyon opposes summary judgment, and he filed a cross-motion for summary judgment in his favor as to Count I (doc. no. 21). Porter Jr. moved to strike Doyon's cross-motion for summary judgment (doc. no. G), which Doyon also opposes.

Standard of Review

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Faiella v. Fed. Nat'l Mortg. Assoc., 928 F.3d 141, 145 (1st Cir. 2019). "A genuine issue of material fact only exists if a reasonable factfinder . . . could resolve the dispute in that party's favor." Town of Westport v.

Monsanto Co., 877 F.3d 58, 64-65 (1st Cir. 2017) (internal quotation marks and citation omitted). When the parties file cross-motions for summary judgment, the court views "each motion separately, drawing all inferences in favor of the nonmoving party." Giguere v. Port Res. Inc., 927 F.3d 43, 47 (1st Cir. 2019).

Under the District of New Hampshire's Local Rules, "[a] memorandum in support of a summary judgment motion shall incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which the moving party contends there is no genuine issue to be tried." LR 56.1(a). Similarly, "[a] memorandum in opposition to a summary judgment motion shall incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which the adverse party contends a genuine dispute exists so as to require a trial. All properly supported material facts set forth in the moving party's factual statement may be deemed admitted unless properly opposed by the adverse party." LR 56.1(b).

In his memorandum in support of his motion for summary judgment, Porter Jr. complied with Local Rule 56.1(a) by providing a statement of material facts supported by appropriate record citations. In his cross-motion for summary judgment/opposition to Porter Jr.'s summary judgment motion,

instead of filing a statement of material facts, Doyon accepted "as true the factual assertions contained in" paragraphs 1 through 21, 24 through 29, and 31 through 48 of Porter Jr.'s statement of facts. Doc. 22 at 1. Doyon opposed paragraphs 22, 23, and 30 of Porter Jr.'s statement of facts on the ground that they contained legal argument. Doyon filed no additional evidentiary material of any kind.

Under these circumstances, the court adopts Porter Jr.'s statement of facts, noting those paragraphs to which Doyon objects:

> 1. Plaintiff, David Doyon, (hereinafter "David") is a citizen and resident of the state of Arizona, residing at 10311 West Monaco Blvd., Arizona City, Arizona 85123. Complaint ¶ 1. David is the son and only child of Bernadette Porter, (hereinafter "Bernadette"), and stepbrother to Joel Porter, Sr., (hereinafter "Joel, Sr."). Id. at ¶ 2.
>
> 2. Defendant, Joel R. Porter, Jr., (hereinafter "Joel, Jr.") is a citizen and resident of the state of California, residing at 25 Sean Court, Roseville, California 95678, and is son to Joel, Sr. and stepson to Bernadette. Id. at ¶ 3.
>
> 3. Joel, Sr. and Bernadette were married for approximately thirty-two (32) years, and mutually contributed to the accumulation of checking accounts, savings accounts, money market accounts, IRA's, investment accounts and life insurance. Answer ¶ 11.
>
> 4. Joel, Sr. was the sole owner of real estate in Raymond, New Hampshire as well as real estate in Epping, New Hampshire. Id. at ¶ 12. Bernadette was the sole owner of real estate located at 1257 Smyth Road, in Hooksett, New Hampshire that was occupied by both Joel, Sr. and Bernadette. Id. at ¶ 13.

3

5. Joel, Sr. and Bernadette jointly owned a property in Port St. Charlotte, Florida, and jointly held financial accounts, such as checking and savings accounts, and money-market accounts. Complaint ¶ 14; Deposition of Attorney Sheehan p. 17 (hereinafter "Sheehan Deposition"). Ex. A.

6. The financial assets, personal tangible property, and real estate properties in Raymond, Hooksett, and Epping, New Hampshire, and the Florida property consist of the majority of the marital assets. Complaint ¶ 15; Sheehan Deposition p. 13-17, 25.

7. On March 15, 2018, Bernadette and Joel, Sr. consulted with Attorney Virginia Sheehan at her office at 2 Delta Drive, Suite 303, Concord, New Hampshire for the purpose of preparing an estate plan. Complaint ¶ 16; Sheehan Deposition p. 5. Initially, the meeting was only scheduled by David for Bernadette due to an upcoming surgery, but both Bernadette and Joel, Sr. attended. Id. at 9-10.

8. During their meeting with Attorney Sheehan, Joel, Sr. and Bernadette discussed how to draft the distribution of their assets, alongside the questionnaire Attorney Sheehan sent to Bernadette to fill out as best she could. Complaint ¶ 17; Sheehan Deposition p. 11.

9. Attorney Sheehan testified that she had tried to engage both Bernadette and Joel, Sr. in the conversation of their assets, as Bernadette did most of the talking and Joel, Sr. was fairly quiet, which Attorney Sheehan expressed as concerning but was common. Id. at 21.

10. Per this conversation on March 15, 2018, upon Joel, Sr.'s death, the Raymond and Epping Property would pass to Joel, Jr. and the Hookset property would pass to David, reserving a life estate to Joel, Sr., if he survived Bernadette. Complaint ¶ 17a–b; Sheehan Deposition p. 26. Further, upon the death of Joel, Sr. or Bernadette, the assets would pass to the survivor of the two of them, and then divided into equal shares between the parties, aside from some tangibles and the

real estate, when the survivor died. Complaint ¶ 17c—d; Sheehan Deposition p. 19, 71.[1]

11. While Joel, Sr., and Bernadette expressed their wishes during the March 15, 2018 meeting with Attorney Sheehan, Joel, Sr. and Bernadette were explicitly made aware that upon the death of one spouse, "The surviving spouse can change their will to change the disposition, but the survivor cannot affect the New Hampshire real estate." Id. at 18.

12. Attorney Sheehan subsequently began drafting the estate planning documents for Joel, Sr. and Bernadette, and did not set up a second appointment in order to give them time to review the drafts she was proposing. Id. at 22.

13. On March 27, 2018, Attorney Sheehan sent a letter to Joel, Sr. and Bernadette enclosing, in part, their draft Wills. Id. at 27. In this letter, Attorney Sheehan clearly explained that the Wills contained an "Article Nine", which stated that either Bernadette or Joel, Sr. was free to modify their Will at any time. Id. at 27-28.

14. Once she sent draft estate planning documents to Joel, Sr. and Bernadette, Attorney Sheehan reached out to David to inquire as to if Joel, Sr. and Bernadette had read over the documents. Id. at 84.

15. On April 1, 2018, Joel, Jr. and his wife, Martina, travelled from their home in California and stayed in New Hampshire with Joel, Sr. and Bernadette to provide assistance and care to Joel, Sr. and Bernadette during and following Bernadette's surgery. Complaint ¶ 18; Defendant's Affidavit in Support of Defendant's Motion for Summary Judgment ¶ 3 (hereinafter "Joel, Jr. Affidavit"). Ex. E.

16. On April 2, 2018 Bernadette and Joel, Sr. met with Attorney Sheehan to review and execute their estate planning documents. Complaint ¶ 20. Attorney Sheehan was unaware of any prior estate planning documents for

---

[1] Doyon refers to the plan discussed at the March 15 meeting with Attorney Sheehan as the "mutual scheme."

either Joel, Sr. or Bernadette. Sheehan Deposition p. 14. Joel, Sr. did have a Last Will and Testament executed on March 26, 1975. Ex. B.

17. Joel, Jr. and David were not in the room when Bernadette and Joel, Sr. were to review and sign their documents with Attorney Sheehan. Sheehan Deposition p. 28. When Joel, Jr. and David went back into the room where Bernadette and Joel, Sr. were, Attorney Sheehan informed them that the New Hampshire Advanced Directives had been executed by both Joel, Sr. and Bernadette and that only Bernadette had executed her Will. Id. at 35.

18. Attorney Sheehan informed the group that Joel, Sr. was having some difficulty when it was time for him to execute his Will, after reviewing many documents, and she was uncomfortable having him execute his Will. Id. at 34. Attorney Sheehan stated that she had no opinion whether Joel, Sr. was able or not able to understand his Will and further estate planning documents. Id.

19. Attorney Sheehan explained that she had walked Joel, Sr. slowly through the signing of his Advanced Directive because he was hard of hearing, however he was able to joke with her and sign and initial in all of the places that Attorney Sheehan directed him to. Id. at 32-36. Attorney Sheehan felt either he did not want to talk to her very much and was nervous for Bernadette's surgery, or was taking a while to understand the documents. Id.

20. No follow-up appointment for Joel, Sr. was ever scheduled with Attorney Sheehan to execute the Will she had drafted. Answer ¶ 21

21. According to Bernadette's Will, although she and Joel, Sr. were expecting to be executing a Will at the same time, on the same day, it was not their intent that the Wills be deemed mutual, reciprocal, dependent on one another, or executed pursuant to a contract. Answer ¶ 22; Bernadette's Last Will and Testament at p. 5 (Article Nine). Ex. C.

22. [Doyon objects to this paragraph] This is consistent with Attorney Sheehan's advice to both of them that although they had expressed wanting to split everything equally, aside from the real property, between Joel, Jr. and David, that whoever dies second ultimately has

6

control over the entire plan and can change the plan. Sheehan Deposition p. 69-71.

23. [Doyon objects to this paragraph] Therefore, Joel, Sr. was not obligated to come back to sign his Will as there was no contractual agreement in Bernadette's Will that required Bernadette and Joel, Sr. to have mutual Wills. Id. at 38-39.

24. On April 19, 2018, Bernadette passed away unexpectedly due to complications from surgery that had been performed on April 3, 2018. Complaint ¶ 23; Answer ¶ 23 Subsequently, Joel, Jr. and his wife remained in the Hooksett property for a period of time to assist Joel, Sr., as Bernadette's Will left him a life estate in the Hooksett residence. Id. at ¶ 24.

25. Bernadette's Will appointed Joel, Sr. as executor, and appointed David and Joel, Jr. as alternate co-executors. Complaint ¶ 25. The parties then both met with Attorney Sheehan to discuss the administration of Bernadette's estate, and agreed to be co-executors of Bernadette's Will. Id. at ¶ 26.

26. On April 24, 2018, Joel, Sr. signed a declination document that said he did not want to serve as the executor of Bernadette's estate. Sheehan Deposition p. 37. Attorney Sheehan met with Joel, Sr. to confirm he did not want to be the executor of Bernadette's estate and that he wanted the parties to do it, and he confirmed this. Id. at 79.

27. Attorney Sheehan prepared and filed the petition seeking the allowance of Bernadette's Will and the appointment of the parties as co-executors, which was allowed by the New Hampshire Circuit Court — 6th Circuit — Probate Division in Concord, on May 17, 2018. Complaint ¶ 4, 27.

28. On April 25, 2018, David returned home to Arizona, leaving Joel, Jr. and his wife residing with Joel, Sr. in the Hooksett, New Hampshire property. Id. at ¶ 29. Joel, Jr. then assisted his father and Attorney Sheehan in transferring the assets from Bernadette's estate to Joel, Sr. pursuant to Bernadette's' Will. Answer ¶ 30.

29. An email from Attorney Sheehan on May 2, 2018 indicated that Joel, Jr. was to take his father to Bank of America with Bernadette's death certificate to remove Bernadette's name from their joint accounts and make the claim for her life insurance pursuant to her Will, which was a common practice for family to help with this process. Sheehan Deposition p. 40-41, 85.

30. [Doyon objects to this paragraph] As these assets were willed to Joel, Sr., as the survivor of Bernadette, he was free to do with these assets what he wished. Id. at 41-42.

31. Attorney Sheehan offered to assist Joel, Sr. with the retitling of financial assets and beneficiary designations, however Joel, Jr. said he would take care of it, which she attributed to the fact that Joel Jr. was there, in New Hampshire, with his father as well as the costly legal fees. Id. at 80-82.

32. Joel, Sr. then retained the services of Attorney Kelly Shanahan (hereinafter "Attorney Shanahan"). Affidavit in Support of Defendant's Motion for Summary Judgment 112 (hereinafter "Shanahan Affidavit"). Ex. D

33. On April 30, 2018 Joel, Sr. met with Attorney Shanahan to discuss his real estate holdings, and how Joel, Sr. wanted to dispose of his property when he died. Shanahan Affidavit ¶ 1, 2. Ex. D.

34. Joel, Sr. also wanted to purchase the Hooksett, New Hampshire property from David. On June 4, 2018, Attorney Shanahan contacted David inquiring on Joel, Sr.'s behalf about acquiring this property from the him. Answer ¶ 37; Sheehan Deposition p. 48.

35. Joel, Sr. unequivocally represented to Attorney Shanahan that he wanted all of his property to pass to his son, Joel, Jr., upon his death. Shanahan Affidavit ¶ 4.

36. Attorney Shanahan discussed with Joel, Sr. how he held title to his financial accounts and Attorney Shanahan confirmed that all personal property would pass to Joel, Jr. upon his death by operation of law and/or because Joel, Jr. was identified as the beneficiary. Id. at ¶ 5.

37. Regarding the properties in Raymond and Epping, New Hampshire and the property in Florida, Joel, Sr. wanted these properties to pass to Joel, Jr. so Attorney Shanahan advised Joel, Sr. that if he held title to the real estate jointly, these properties would pass by operation of law to Joel, Jr. upon Joel, Sr.'s death. Id.

38. Attorney Shanahan was also given a Power of Attorney that was signed by Joel, Sr. in 2017 identifying Martina Porter, Joel, Jr.'s wife (hereinafter "Martina"), as Joel, Sr.'s attorney-in-fact. Id. at ¶ 6.

39. Joel, Sr. then asked Attorney Shanahan to prepare a Quitclaim Deed, which she did, that conveyed the Raymond and Epping, New Hampshire properties from Joel, Sr., as the sole owner, to Joel, Jr. and his father as joint tenants with rights of survivorship. Id. at ¶ 7.

40. On or about April 30, 2018, Martina, acting as attorney-in-fact for Joel, Sr., executed a Quitclaim Deed which conveyed the Raymond and Epping, New Hampshire properties from Joel, Sr. as the sole owner to Joel, Jr. and Joel, Sr. as joint tenants with rights of survivorship, per the wishes of Joel, Sr. Complaint ¶ 33; Answer ¶ 33.

41. Attorney Shanahan observed Joel, Sr. instruct Martina to sign the deed for him, and after questioning Joel, Sr., Attorney Shanahan was confident that he knew and understood that this deed conveyed the properties to himself and his son, Joel, Jr., and confirmed that this was his intention. Shanahan Affidavit ¶ 7.

42. Joel, Sr. stated to Attorney Shanahan that he did not want to sign the deed himself because he feared his competency would be questioned by David Doyon and he believed the transfer would not be contested if Martina signed it using her authority under the Power of Attorney. Id. at ¶ 8.

43. On May 1, 2018 Attorney Sheehan contacted Joel Jr. to ask him about bringing his father back in to complete his estate planning, and Joel, Jr. responded saying they wanted to get what was in process taken care of and then

9

they would figure out what to do. Sheehan Deposition p. 44.

44. Attorney Sheehan further contacted Joel, Jr., his father and David, by a letter dated May 21, 2018 to have Joel, Sr. come back in to continue working on his estate planning matters, however Joel, Sr. did not return to Attorney Sheehan. Id. at 88-89.

45. Joel, Sr. retained Florida Attorney Dorothy K. Korzen to draft a deed to convey the Florida Property from Joel, Sr. as sole surviving joint owner to Joel, Jr. and Joel, Sr. as joint tenant with rights of survivorship. Answer ¶ 34. On or about May 11, 2018 Joel, Jr. brought Joel, Sr. to a New Hampshire notary public to execute the Florida Deed, which was recorded on May 22, 2018. Complaint ¶ 35; Joel, Jr. Affidavit ¶ 18.

46. Joel, Sr. passed away on August 19, 2018 while still a resident of New Hampshire, and without having executed a Will with Attorney Sheehan. Answer ¶ 39; Sheehan Deposition p. 47.

47. As both the surviving joint tenant of Joel, Sr.'s jointly owned assets, and as Joel, Sr.'s sole heir-at-law and named beneficiary, Joel, Jr. inherited the entirety of Joel, Sr.'s estate. Complaint ¶ 53.

Doc. 16-1 at 3-10.

## Discussion

Porter Jr. moves for summary judgment in his favor on both counts of Doyon's complaint. In response, Doyon filed a cross-motion for summary judgment on Count I of the complaint (doc. no. 21). Porter Jr. filed a reply and a motion to strike Doyon's combined response/cross-motion for summary judgment (doc. no. 24) on the ground that it was untimely, as the deadline for motions for summary judgment passed on August 1,

10

2019, and on the ground that it did not comply with Federal Rule of Civil Procedure 56 because it requested findings of fact.

In his motion for summary judgment, Porter Jr. contends that there is insufficient evidence to support Doyon's claims for intentional interference with inheritance and unjust enrichment. As to his intentional interference claim, Doyon responds that the facts show that he had an expectation of inheriting an equal share of certain parts of Porter Sr.'s estate, including half of the Florida Property and half of the financial assets. As to his unjust enrichment claim, Doyon assets that "[t]he facts are presently insufficiently developed to determine whether" Porter Jr. exercised undue influence over Porter Sr. Doc. 22 at 14.

### A. Intentional Interference with Inheritance

For the purpose of resolving the summary judgment motions,[2] the court uses the standard for intentional interference with inheritance from the Restatement (Second) of Torts: "One who by fraud, duress or other tortious means intentionally prevents

---

[2] As discussed in greater detail in the court's order on Porter Jr.'s motion to dismiss, doc. no. 13, the New Hampshire Supreme Court has not addressed whether it recognizes the tort of intentional interference with inheritance. In that order, this court found that the tort would be recognized, but it did not address the standard that would apply because Porter Jr. did not raise that issue.

11

another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift." Restatement (Second) of Torts § 774B (1979); see also Nat'l Employment Serv. Corp. v. Olsten Staffing Servs., Inc., 145 N.H. 158, 162 (2000) ("We have previously applied the Restatement (Second) of Torts to actions for tortious interference with contractual relations.").[3] The comments to § 774B further explain the type of conduct that falls within the scope of intentional interference with an inheritance:

> The liability stated in this Section is limited to cases in which the actor has interfered with the inheritance or gift by means that are independently tortious in character. The usual case is that in which the third person has been induced to make or not to make a bequest or a gift by fraud, duress, defamation or tortious abuse of fiduciary duty, or has forged, altered or suppressed a will or a document making a gift. In the absence of conduct independently tortious, the cases to date have not imposed liability under the rule stated in this Section. Thus one who

---

[3] In their briefs, Doyon and Porter Jr. refer to the standard for "intentional interference with expectancy of inheritance" articulated in Schilling v. Herrera, 952 So. 2d 1231, 1234 (Fla. Dist. Ct. App. 2007), which requires "(1) the existence of an expectancy; (2) intentional interference with the expectancy through tortious conduct; (3) causation; and (4) damages." While the Restatement standard is articulated differently than the Florida standard used by the parties, they are, in the aspects relevant to this order, functionally the same. See Lindberg v. United States, 164 F.3d 1312, 1319 (10th Cir. 1999) (noting that "[t]he elements of the tort are quite uniform," citing the Restatement (Second) of Torts § 774B, and setting out elements similar to those in Schilling v. Herrera).

> by legitimate means merely persuades a person to disinherit a child and to leave the estate to the persuader instead is not liable to the child.

Restatement (Second) of Torts § 774B cmt. c (1979).

Porter Jr. contends that Doyon cannot show that he intentionally interfered with an inheritance because Doyon did not have a vested right in the inheritance and because Porter Jr. did not interfere with any such inheritance. Doyon responds that he need not prove that he had a vested right in an inheritance and that the conduct of Porter Jr. caused him to lose an inheritance that he would have received. In this case, whether Doyon had a vested right in the inheritance or a mere expectancy that he would receive the inheritance makes no difference because there is no evidence from which a reasonable jury could find that Porter Jr., through tortious means, prevented Doyon from receiving an inheritance that he otherwise would have received. See Restatement (Second) of Torts § 774B (1979); see also Harmon v. Harmon, 404 A.2d 1020, 1024 (Me. 1979) (holding that a "mere expectancy" or non-vested interest is sufficient for liability for intentional interference with inheritance if, "but for the tortious interference" of the defendant, the plaintiff "would in all likelihood have received a gift or specific profit from a transaction").

Doyon contends that Porter Jr. worked to "defeat" an agreement between Porter Sr. and Bernadette to devise to Doyon

and Porter Jr. equal shares of certain parts of their joint assets. Even though such a plan was discussed at the March 15 meeting with Attorney Sheehan, Porter Sr. was never under any obligation to follow it, and Porter Jr. was free to persuade Porter Sr. to devise his assets in another way. As Attorney Sheehan informed Bernadette and Porter Sr. during the meeting, "the survivor could change their documents after the death of the first spouse." Doc. 16-2 at 19. Article Ninth, which Attorney Sheehan included in both Bernadette's will and Porter Sr.'s draft will, stated the following: "Although my spouse and I are each executing a Will on the same day, it is not my intent, nor is it my spouse's intent, that such Wills be construed or deemed mutual, reciprocal or dependent upon the other, nor are such documents executed pursuant to a contract." Doc. 16-4 at 6. Finally, in her deposition, Attorney Sheehan made clear that "[t]here was no contract between the two of them that said you can't modify your will after I die . . . ." Doc. 16-2 at 23. Therefore, under these circumstances that are uncontroverted, even if Porter Sr. had signed the draft will prepared for him by Attorney Sheehan, he would have been free to change it if he decided that he wanted to devise his assets in a different way.

Indeed, after the March 15 meeting and after Bernadette's death, Porter Sr. expressed his unambiguous intent to have

14

Porter Jr. inherit the entirety of his estate.[4]  Attorney Shanahan, in her affidavit, stated that "Mr. Porter unequivocally represented that he wanted all of his property to pass to his son, Joel Porter, Jr., upon his death."  Doc. 16-5 ¶ 4.  Even if Porter Jr. persuaded Porter Sr. at some time after the March 15 meeting to leave his entire estate to him, the Restatement makes clear that there is no liability if "legitimate means" are used to persuade a person to devise his estate in a particular way.  Restatement (Second) of Torts § 774B cmt. c (1979).  Doyon has not submitted any evidentiary material of his own, and Doyon has not identified any evidence submitted by Porter Jr., that indicates that Porter Jr. induced his father "to make or not to make a bequest or a gift by fraud, duress, defamation or tortious abuse of fiduciary duty," and he has not presented any evidence that Porter Jr. "forged, altered or suppressed a will or a document making a gift."  Id.

As there is no evidence from which a reasonable jury could conclude that Porter Jr. did anything "by fraud, duress or other tortious means" to prevent Doyon from receiving an inheritance that he otherwise would have received, Porter Jr. is entitled to summary judgment as to Count I.  Because the court finds that

---

[4] Notably, Porter Sr.'s March 1975 will, which Attorney Sheehan was not told about, leaves his estate to his first wife, Jacqueline Porter, and then, if Jacqueline Porter predeceased him, to Porter Jr.  Doc. 16-3.

Porter Jr. is entitled to summary judgment as to Count I, Doyon's cross-motion for partial summary judgment is denied.[5]

B. Unjust Enrichment

Unjust enrichment occurs when an individual obtains title to property by fraud, duress, or undue influence, or violates a duty arising out of a fiduciary relation to another. See In re Estate of Cass, 143 N.H. 57, 60 (1998); Patey v. Peaslee, 101 N.H. 26, 29 (1957). Porter Jr. argues that there are no facts supporting Doyon's claim that he exercised undue influence over Porter Sr. In response, Doyon contends that summary judgment is inappropriate because the facts are insufficiently developed to determine whether Porter Jr. unduly influenced Porter Sr.

Once Porter Jr. asserted that there was an absence of evidence to support Doyon's claim, it became Doyon's burden to develop facts to support it. E.g., Martin v. Tricam Indus., Inc., 379 F. Supp. 3d 105, 107-08 (D. Mass. 2019). Doyon, however, has not presented any evidence in support of his unjust enrichment claim, and the evidence presented by Porter Jr. does not support an unjust enrichment claim. Therefore, the court

---

[5] While Doyon's cross-motion for partial summary judgment was untimely, the court has considered the arguments made by Doyon in his filing. Because Porter Jr.'s motion for summary judgment is granted, Porter Jr.'s motion to strike Doyon's cross-motion for partial summary judgment is denied as moot.

16

grants Porter Jr.'s motion for summary judgment in his favor as to Count II.

## Conclusion

For the foregoing reasons, Porter Jr.'s motion for summary judgment (doc. no. 16) is granted. Doyon's cross-motion for partial summary judgment (doc. no. 21) is denied. Porter Jr.'s motion to strike (doc. no. 24) is denied as moot. The Clerk of Court is directed to enter judgment in favor of Porter Jr. and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

November 13, 2019

cc: Counsel of Record.